**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| ANGELA BRONSON AND PAUL HINZMAN, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>ADVANCED HOME TECHNOLOGIES, INC. D/B/A AHT WISCONSIN WINDOWS,<br><br>　　　　　　Defendant. | Case No. 3:21-cv-00247<br><br>Judge James D. Peterson<br><br>Magistrate Judge Stephen L. Crocker |

**PLAINTIFF ANGELA BRONSON'S MEMORANDUM**
**<u>OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION</u>**

## INTRODUCTION

As illegal telemarketing cases go, this class action case is straightforward and should be certified. Defendant Advanced Home Technologies, d/b/a AHT Wisconsin Windows ("AHT" or "Defendant") made illegal telemarketing calls to Plaintiff Angela Bronson,[1] and members of the Class despite Plaintiff's and the Class's clear request that AHT stop calling them. These illegal calls resulted from AHT's practice, and eventual *written policy*, directing its call center agents to resume placing calls to individuals three months after they explicitly asked not to be contacted again. This policy and practice violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. AHT's call records and other documents plainly demonstrate and substantiate the illegal calling activity and identity of Class members. AHT raises no individualized defenses that call liability into doubt.

Count I of the Complaint, alleging AHT illegally failed to record and honor "do not call" requests for no less than five years from the time the request is made (47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6)), is well-suited for class certification. Pursuant to Fed. R. Civ. P. 23, Plaintiff Bronson seeks an order certifying a class of similarly situated persons who received illegal telemarking calls as follows:

> All persons to whom: (a) AHT made more than one nonemergency telephone call within 12 months; (b) promoting AHT services; (c) to a residential telephone number; (d) who had previously made a "do not call request" to AHT; (e) but received two or more calls in a twelve-month period after that request was recorded by AHT; (f) between May 5, 2017 and February 8, 2022.

As demonstrated below, this Class satisfies each of the Rule 23(a) and (b)(3) elements for class certification. The Court should grant Plaintiff's motion to certify the Class.

---

[1] Plaintiff Paul Hinzman is not a member of the proposed Class and is thus not seeking appointment as the Class Representative of the Class defined herein. Plaintiffs are not seeking class certification for Count II of their Complaint at this time.

## BACKGROUND

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). These procedures are codified at 47 CFR § 64.1200(d)(1)-(7). Specifically, § 64.1200(d) requires a company to train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6). These rules prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR § 64.1200(d). The TCPA imposes a minimum of $500 in statutory damages per violative call and provides for up to $1,500 per violation if the Defendant acted "willfully or knowingly."  47 U.S.C. § 227(b)(3).

## STATEMENT OF FACTS

AHT is a Wisconsin-based company that sells and installs windows and doors throughout Wisconsin. *See* https://www.ahtwindows.com/our-company/. To promote its products and services, AHT relies heavily on telemarketing conducted through its two internal call centers staffed by AHT-employed call center marketers. Ex. 1 at 13:15-17 (Meersman Dep.)[2]; Ex. 2, at pg. 3 (AHT000008). ███████████████████████████████████████

███████████████████████████████████████████ Ex. 2, at AHT000026

---

[2] All references to "Ex. __" are to the Declaration of Raina Borrelli filed herewith.

(AHT000008). ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ Ex. 3, at

AHT0001507 (AHT0001449). AHT's call centers have been an integral part of its marketing

operation for years, and AHT added a new call center location in 2020. Ex. 1, at 12:12-18, 28:3-5

(Meersman Dep.). AHT employs approximately 7-8 full time call center agents tasked with making

outbound telemarketing calls. *Id.*, at 28:6-17 (Meersman Dep.).

██████████████████████████████████████████████████████████

████████████████████████████████ *See, e.g.* Ex. 2, at AHT000027 (AHT000008);

Ex. 4, at 17:23-18:5 (Leiser Dep.); Ex. 5 (AHT0001668). AHT inputs leads into AHT's customer

management program, Lead Perfection, which tracks AHT's marketing calls. Ex. 4, at 19:10-19

(Leiser Dep.). AHT's call center agents then call these individuals. Ex. 1, at 25:7-11 (Meersman

Dep.). ██████████████████████████████████████████████████████

████████████████████████████████████ Ex. 6, at AHT000064 (AHT000062); Ex.

3, at AHT0001512 (AHT0001449); Ex.1, at 43:7-9 (Meersman Dep.) ("Q. Okay. Are call center

marketers supposed to disposition each call? A. Yes."). ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Ex. 6, at AHT000064 (AHT000062). ██████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ *Id*.

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

*Id.*; Ex. 3, at AHT0001512 (AHT0001449); Ex. 1, at 43:7-9 (Meersman Dep.). ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ *Id.*; *see also* Ex. 1, at 59:3-60:5 (Meersman Dep.). ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████ Ex. 6, at AHT000064 (AHT00062). The result of this written policy, which memorialized a practice AHT had been engaged in since at least 2017, was that AHT was explicitly instructing its call center agents to make illegal telemarketing calls to consumers that had already made do not call requests. Ex. 1, at 59:3-60:5, 61:1-8 (Meersman Dep.).



Ex. 6, at AHT000064 (AHT000062).



Ex. 3, at AHT0001534 (AHT0001449); Ex. 7 (AHT000491).



Ex. 3, at AHT0001534 (AHT0001449)

AHT engaged in a long-running practice and then followed a formal written policy of violating the TCPA, despite the instructions in its written Do Not Call Procedures. Ex. 1, at 68:15-70:11 (Meersman Dep.). And it never updated those procedures to reflect its actual practice (and

eventual written policy) of intentionally not honoring consumers' do not call requests. *Id.* In fact, AHT all but admitted that its internal Do Not Call policy violated the TCPA, testifying that it eventually stopped this illegal calling practice because of "A new interpretation of the DNC or the TCPA." *Id.* at 60:8-25 (Meersman Dep.). However, from the time this lawsuit was filed (April 14, 2021) until the last date of the call records produced (February 8, 2022), AHT continued to make calls to consumers who had already requested not to be called again. Ex. 9 (Woolfson Rpt.).

Plaintiff Bronson was a victim of AHT's illegal calling, receiving many calls from AHT between early 2018 and July 2021, as reflected in AHT's own call records. Decl. of Angela Bronson at ¶7; Ex. 8 (AHT0000479); Ex. 9, at ¶32 (Woolfson Rpt.). Over the course of eight months, between November 16, 2020 and July 15, 2021 alone, AHT called Ms. Bronson a staggering 64 times. Ex. 9, at ¶32 (Woolfson Rpt.). Ms. Bronson recalls answering at least one of those phone calls and asking the caller, who identified herself as a representative of AHT, to stop calling her. Bronson Decl., at ¶9. AHT's call records reflect that Plaintiff's Do Not Call request was made on February 4, 2021. Ex. 8 (AHT0000479); Ex. 9, at ¶32 (Woolfson Rpt.). However, after Plaintiff asked the calls to stop, on April 29, 2021, AHT started calling Plaintiff again, making five additional calls to Ms. Bronson despite her initial Do Not Call request. *Id.* On July 15, 2021, AHT made its last telemarketing call to Ms. Bronson. *Id.*

AHT's own call records substantiate the claims in this case. Plaintiff retained an expert witness, Aaron Woolfson, to analyze the call data. Ex. 9 (Woolfson Rpt.). Mr. Woolfson has vast experience in the telecommunications field and reviews and creates SQL databases for both TCPA plaintiffs and defendants. *Id.* at ¶¶7-14. Mr. Woolfson has designed and built equipment used to integrate with the telephone network and register call records. *Id.* Indeed, just last year Chief Judge S. Maurice Hicks, Jr. in the Western District of Louisiana ruled Mr. Woolfson was qualified as an

expert in a TCPA case finding "an examination of Woolfson's personal documents and past experiences demonstrate he is an expert in the telecommunications field." *Lester v. Wells Fargo Bank, NA,* No. 15-2439, 2021 WL 1299205, at *3 (W.D. La. Apr. 7, 2021).

Mr. Woolfson received files representing all AHT telemarketing calls made between April 17, 2017 and February 8, 2022. Ex. 9, ¶3 (Woolfson Rpt.). Mr. Wolfson created an SQL database to allow for organization and analysis of the call data. *Id.* at ¶¶25, 28. Mr. Woolfson then analyzed the calling data to identify calls with a DNC, DNCR, or FDNC call disposition, indicating the call recipient made a do not call request. *Id.* at ¶29. Mr. Woolfson then identified Do Not Call telephone numbers that received at least two subsequent calls, finding AHT made 16,104 unique calls to 1,681 unique numbers between May 5, 2017 and February 8, 2022 where the called-number received two or more calls one or more days *after* those individuals had requested not to receive further phone calls. *Id.* at ¶34.

## PROCEDURAL HISTORY AND PROPOSED CLASS

Plaintiffs filed this case on April 14, 2021, alleging two causes of action under the TCPA. Doc. No. 1. On May 19, 2021, AHT filed its Answer. Doc. No. 5. The parties engaged in fact discovery, including written discovery and depositions. Plaintiff Bronson now seeks to certify a TCPA claim (Count I of the Complaint) on behalf of herself, and a class defined as:

> All persons to whom: (a) AHT made more than one nonemergency telephone call within 12 months; (b) promoting AHT services; (c) to a residential telephone number; (d) who had previously made a "do not call request" to AHT; (e) but received two or more calls in a twelve-month period after that request was recorded by AHT; (f) between May 5, 2017 and February 8, 2022.

> Excluded from the Class are counsel, AHT, and any entities in which AHT has a controlling interest, AHT's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

## **LEGAL STANDARD**

To obtain class certification, putative class representatives must demonstrate four prerequisites for certification under Rule 23(a) and at least one basis for certification under Rule 23(b). *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992); *Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006), *as amended on reconsideration in part*, No. 94 C 1742, 2007 WL 1423866 (N.D. Ill. May 10, 2007). "A district court has broad discretion to determine whether certification of a class action lawsuit is appropriate." *Olson v. Brown*, 594 F.3d 577, 584 (7th Cir. 2010). Plaintiff is responsible for showing that class certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).

The Court does not inquire into the merits of the claims unless and "only to the extent [] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1195 (2013). Courts should only consider law and facts germane to certification. *See id.*; *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). Consideration of the merits "runs the risk of supplanting the jury as the finder of fact." *Messner v. Northshore Univ. Healthsystem,* 669 F.3d 802, 823 (7th Cir. 2012).

In deciding a motion for class certification, "Rule 23 should be liberally interpreted in favor of the maintenance of class actions." *Hazelwood v. Bruck Law Offices SC*, 244 F.R.D. 523, 524 (E.D. Wis. 2007); *Flanagan v. Allstate Ins. Co*., 242 F.R.D. 421, 427 (N.D. Ill. 2007), *modified on other grounds*, 242 F.R.D. 434. Any doubts about the facts should be resolved in favor of certification. *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 417 (N.D. Ill. 2007).

# ARGUMENT

## I.    Plaintiff Bronson and the Class Meet the Requirements of Rule 23(a).

### A.    Numerosity is Satisfied.

"The numerosity requirement is satisfied when 'the class is so numerous that joinder of all members is impracticable.'" *Smith-Williams v. United States*, No. 17-CV-823-WMC, 2019 WL 1866316, at *2 (W.D. Wis. Apr. 25, 2019) (quoting Fed. R. Civ. P. 23(a)(1)). Numerosity is a low bar. Here, Plaintiff's expert has opined that the class consists of 1,681 individuals. Ex. 9, ¶34 (Woolfson Rpt.). Thus, Plaintiff easily satisfies numerosity as joinder is clearly impracticable. *See Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 515 (E.D. Wis. 2014) ("The Seventh Circuit has implied that even a class of forty may be sufficient to warrant class certification.").

### B.    Commonality is Satisfied.

Commonality requires there to be "questions of law or fact common to the class" (Fed. R. Civ. P. 23(a)(2)) and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). As the Supreme Court has explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" such that "all their claims can productively be litigated at once." *Id.* at 350 (citation omitted). "The Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 359) (cleaned up). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.* at 756 (citing *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010)). "What matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek*, 764 F.3d at 755 (quoting *Wal-Mart*, 564 U.S. at 350)

(alteration omitted); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (common questions arise where "the defendants have engaged in standardized conduct towards members of the proposed class").

"Class certification is normal in litigation under [the TCPA] because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. & Assoc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). This case is well-suited to class certification because it involves common legal and factual questions, including:

- Whether AHT violated the TCPA's internal do not call policy requirements by having a practice, and later a written policy, requiring its call center agents to call individuals who make do not call requests again after three months;

- Whether Plaintiff and Class members are entitled to recover statutory damages of up to $500 per violation of § 227(c);[3]

- Whether AHT's actions constitute willful and knowing violations of the TCPA such that treble damages are appropriate.

All class members share these legal and factual questions, thus satisfying the commonality requirement. S*ee, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) (finding commonality satisfied in TCPA case where each class member received at least one phone call or text message from Chase to her cell phone). The *Gehrich* court reasoned that even though class members received different numbers of calls and alerts on different subjects, "Rule 23(a)(2) does not demand that every member of the class have an identical claim, and some

---

[3] These damages are set by statute and require no individualized analysis of harm. *See, e.g.*, *Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894, 898–99 (N.D. Ill. 2010) (availability of statutory damages in TCPA case made individualized damages inquiry unnecessary and class certification appropriate).

degree of factual variation will not defeat commonality." *Id.* (cleaned up); *Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 1294659, at *17 (N.D. Ill. Mar. 21, 2019) (common alleged injury for class members who "all received a call from VVT agents, who utilized the VVT Software to market the same vacation package by using prerecorded voice messages.") , *amended in part*, 2020 WL 10963912 (N.D. Ill. July 2, 2020); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (certifying a TCPA case, noting "the case involves common legal questions regarding Defendants' liability under the TCPA"); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (commonality satisfied where "all class members were sent substantially similar unsolicited text messages by the same defendants, using the same automatic dialing technology").

### C.    Typicality is Satisfied.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]here must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). In general, a claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (cleaned up). In *Bauer v. Kraft Foods Glob., Inc.*, this Court said "the focus is whether the representative plaintiffs' claims are based on the same legal theory and arise from the same conduct that gives rise to the claims of the other members of the proposed class." 277 F.R.D. 558, 562 (W.D. Wis. 2012). Typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it may have against certain class members." *Chesemore v. Alliance Holdings, Inc.*, 276

F.R.D. 506, 513 (W.D. Wis. 2011) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Typicality is easily satisfied here, where, pursuant to AHT's telemarketing policy, AHT placed telemarketing calls to Plaintiff and the proposed Class *after* they explicitly asked AHT to not call them again. Moreover, AHT has no potentially individualized defenses. ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████ Ex. 6, at AHT000064 (AHT00062); Ex. 1, at 68:15-70:11 (Meersman Dep.); Ex. 9, ¶¶28-30, 34 (Woolfson Rpt.). Thus, the legal theory for Plaintiff and each Class member is identical and based on AHT's identical conduct under a uniform telemarketing policy and procedure. The injury is also identical: "loss of time and privacy due to [AHT's] calls" marketing its products and services. *See Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 584 (N.D. Ill. 2018). Typicality is satisfied here.

### D. Adequacy of Representation is Satisfied.

Rule 23(a)(4) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry involves three considerations: "(1) whether the chosen representative has antagonistic or conflicting claims with other members of the class, (2) whether the chosen representative has a sufficient interest in the outcome to ensure vigorous advocacy, and (3) whether counsel for the named plaintiff is competent, experienced, qualified, and generally able to conduct the litigation vigorously." *Bruzek v. Husky Oil Operations Ltd.*, 520 F. Supp. 3d 1079, 1095 (W.D. Wis. 2021) (cleaned up).

As discussed above, Plaintiff Bronson's claims are identical to those of the proposed class members, all of whom, like her, received one or more telemarketing calls from AHT after asking AHT not to contact them further. Plaintiff Bronson and the Class thus suffered the same injury, for which she seeks the same damages as the Class. *See Toney*, 323 F.R.D. at 585 (named plaintiff adequate where claims were factually similar to those of the class and where plaintiff's and class members' interests were aligned and conflict-free). Additionally, Plaintiff Bronson has shown her commitment to prosecuting this case by providing information for the Complaint, responding to discovery requests and producing documents, and by communicating with her counsel regarding the status of the litigation. *See* Bronson Decl., ¶¶11-14.

Plaintiff's counsel have extensive experience and proven success with class actions brought under the TCPA and have been appointed as class counsel in numerous matters, both in TCPA cases and in other complex class litigation. *See* Borrelli Decl., ¶¶1-2; Ex. 10 (Turke & Strauss Firm Resume); Declaration of Anthony Paronich. Plaintiff's counsel has undertaken substantial work in this litigation and stand ready, willing, and able to devote the resources necessary to see this case through to a successful outcome. Rule 23(a)(4)'s adequacy requirement is satisfied.

**E.    The Class is Ascertainable.**

Although not an element of Rule 23, Courts have examined whether the class is ascertainable. This is not a stringent requirement, but only requires the class be defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. July 28, 2015). The Seventh Circuit ascertainability test does not depend on "whether, given an adequate class definition, it would be difficult to identify particular members of the class." *Id.* at 658.

Here, the Class definition is "not vague. It identifies a particular group of individuals . . . harmed in a particular way . . . during a specific period in particular areas." *Id.* at

660-61. Notably, Class members are easily identified through AHT's own records using "objective criteria." *Id.* at 657; *see also Krakauer v. Dish Network. L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (finding the class ascertainable because the defendant's own records could be used to "show[] when calls were placed and whether the call went through."). AHT has produced call records showing all telemarketing calls during the proposed Class period, which includes the date of the call and the phone number called. AHT's call center agents were required to assign a disposition code for every call made, and those disposition codes included codes to identify do not call requests. Using only these records from AHT, Class members can be identified, and Plaintiff's expert, Mr. Woolfson, did exactly that. Mr. Woolfson identified telephone numbers that received additional telemarketing calls from AHT within 12 months after making a do not call request during the proposed Class period, thus identifying all putative members of the Class. The Class definition therefore complies with settled law and is, as set forth below, appropriate for certification. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 247-48 (N.D. Ill. 2014) (class ascertainable in TCPA action where class member identifies could be confirmed using phone numbers in the defendants' records, the records of third-party phone carriers and third-party database providers.).

## II.    The Requirements of Rule 23(b)(3) are Met.

Plaintiff requests certification of the Class under Rule 23(b)(3), which "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191. "Rule 23(b)(3) class actions are designed to 'cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing [] undesirable results.'" *Suchanek*, 764 F.3d at 759 (quoting *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). The *Suchanek* court identified the Rule 23(b)(3) factors as follows:

> The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution...of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id*. These factors are assessed against the common questions already identified. *Id.*

Courts routinely certify classes under Rule 23(b)(3) involving violations of the TCPA, including violations of the TCPA's internal do not call policy regulations. *See, e.g. Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015) (certifying internal do not call class of consumers identified on defendant's internal do not call list yet received telemarketing calls from the defendant's agent), *aff'd*, 925 F.3d 643 (4th Cir. 2019); *Chinitz v. Intero Real Estate Services*, No. 18-cv-05623-BLF,  2020 WL 7391299 (N.D. Cal. July 22, 2020) (granting class certification where the class included calls made by 35 different agents to individuals who had previously requested not to be contacted).

### A.    Common Issues Predominate.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. Predominance is satisfied when "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (citation omitted). A plaintiff does not need to "prove that each element of her claim is susceptible to classwide proof." *Amgen,* 568 U.S. at 469 (cleaned up).

"Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015).

The predominance analysis "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 809 (2011). Courts routinely certify TCPA claims because the elements are amenable to classwide proof, including in internal do not call claim cases. *See Krakauer*, 311 F.R.D. at 400 (certifying TCPA class, finding that common questions relating to calls made to proposed internal do not call class predominate over any individual questions) *aff'd*, 925 F.3d at 655–57 (affirming certification, noting that the many common questions of law and issues of fact predominate over individual issues). The TCPA makes it unlawful for any person to initiate "any call for telemarketing purposes to a residential telephone subscriber unless" the caller "has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls," 47 U.S.C. § 277(c)(2); 47 C.F.R. § 64.1200(d).

Here, common issues overwhelmingly predominate. The key legal and factual issue here is whether AHT made telemarketing calls to consumers after they asked to no longer be contacted, in violation of the TCPA. If any individual issues exist (which Plaintiff contends they do not), they are easily resolved through AHT's own call records identifying when do not call requests were made and any subsequent calls, as well as through AHT's practice and eventual written policy of calling people back three months after a do not call request was made. *See Bakov*, 2019 WL 1294659, at *20 (predominance satisfied in TCPA case where the common question affecting the class is whether the defendant's calls to the putative class violated the TCPA).

Additionally, Plaintiff and all Class members seek identical statutory damages under the TCPA, which prevents the need to conduct individualized damages determinations. *See id.* ("The

17

question of appropriate remedies also is common to the class" where "Plaintiffs seek statutory damages, which eliminates individual variations"). The question of whether AHT's conduct was willful or knowing will be resolved with common proof since it focuses on AHT's conduct. *See, e.g., Krakauer*, 925 F.3d at 661–62 (affirming treble damages award after a jury trial based on the evidence presented at trial of defendant's conduct); *APB Assocs., Inc. v. Bronco's Saloon, Inc.*, 315 F.R.D. 200, 215 (E.D. Mich. 2016) (holding the question of whether the defendants' actions were willful in a TCPA case was a common legal question). Notably, these same common facts were at issue in *Krakauer*, where the court explained that the district court properly determined that "all of the major issues could be shown through aggregate records," rejecting the argument that "individual fact-finding would be required," and that because those "determinations were reasonable, there is no error for us to correct." *See* 925 F.3d at 658–59. There, the Fourth Circuit had no difficulty finding that the predominance requirement was met. *See id.* at 658. The same conclusion is warranted here.

### B.    Superiority is Satisfied

When assessing superiority, "the court needs to assess the difficulty and complexity of the class-wide issues as compared with the individual issues." *Suchanek*, 764 F.3d at 760. "Rule 23(b) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). If this class action is not allowed to proceed, the alternative is likely the lack of any relief for class members. That alone shows that a class action is the superior method of litigating these claims. *See* William B. Rubenstein, 2 *Newberg on Class Actions* § 4:87 (5th ed.) (superiority requirement is met in class actions involving small claims because "[i]n such cases, there will either be a class action or there will be no litigation."); *Amchem*, 521 U.S. at 617 ("The

policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (cleaned up).

Most of those who received these unwanted calls would not seek relief on an individual basis because the cost of proceeding on an individual basis would not be practical or economical given the potential size of individual awards. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386 (2012) (noting the unlikely possibility that a consumer would pay the $400 federal court filing fee to bring a $500 claim). As a result, a class action is undoubtedly superior to individual litigation. *See Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *16 (N.D. Ill. Feb. 11, 2014) (finding superiority met, "since the statutory recovery is the greater of $500 or 'actual monetary loss,' individual plaintiffs have a low incentive to bring a lawsuit on their own behalf.") (citation omitted); *Krakauer*, 311 F.R.D. at 400 ("Given the relatively small statutory damages, *see* 47 U.S.C. § 227(c)(5), the class members likely have little interest in controlling the litigation in this case.") (cleaned up); 7A Wright, Miller & Kane, Federal Practice and Procedure (2d ed. 1986) § 1777 (a class action enables those who have small claims that might not be worth litigating individually to combine their resources and vindicate their rights collectively).

Second, a class action consumes far fewer resources than binary litigation. As the *Krakauer* district court wrote, "given the large number of class members and claims, class-wide adjudication of the claims would be more efficient" than piecemeal litigation. *Krakauer*, 311 F.R.D. at 400. Thus, "[a]djudicating these claims in one forum would provide flexibility, control, and consistency that would not exist with individual litigation." *Id.*

19

Third, there is no question that this class action will be manageable, even if the case goes to trial. The thousands of TCPA violations alleged can be proven by one expert witness through a series of AHT's own telemarketing call records. The evidence as to AHT's liability for the calls at issue will involve only a handful of witnesses with actual knowledge of AHT's telemarketing policies and practices. And the evidence as to whether AHT's conduct was knowing or willful, thereby necessitating treble damages, can similarly be proven via a handful of witnesses and a manageable number of documents. There can therefore be no question that a class action is the superior method of adjudicating these claims. *See Krakauer*, 925 F.3d at 655–57.[4]

Finally, and perhaps most importantly, certification of this class will effectuate the important social goals underlying the TCPA — a fact the Fourth Circuit strongly emphasized in *Krakauer*. There, the Court observed that "the advantages of class resolution follow directly from the statute," which "creates a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be." *Id*. at 659. The Court went on to emphasize the societal benefits of allowing class actions like this one, noting that "[t]he TCPA was enacted to solve a problem. Simply put, people felt almost helpless in the face of repeated and unwanted telemarketing calls." *Id*. at 663 (citation omitted). To combat this serious problem, "Congress responded with an Act [the TCPA] that featured a combination of public and private

---

[4] *See also Jay Clogg Realty Grp., Inc. v. Burger King Corp.*, 298 F.R.D. 304, 308–09 (D. Md. 2014) (collecting cases); *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 615, 630 (S.D. Cal. 2015) ("In the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions"); *Ira Holtzman, C.P.A. & Assoc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under [the TCPA]"); *Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities, Inc.*, No. 09-c-07299, 2014 WL 540250, at *15, n. 11 (N.D. Ill. 2014) ("*Chapman I*") (discussing "the many cases during and since 2011 in which TCPA classes have been certified, as well as the Seventh Circuit's observation in *Turza* that class certification is the norm in TCPA cases"), *leave to appeal denied* 747 F.3d 489 (7th Cir. 2014) (Posner, J.).

enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages." *Id.*

As described above, each Class member has a claim of $500 per violative call, with the potential for $1,500 per call if AHT's conduct is found to be knowing and willful. Since the TCPA is not a fee shifting statute, individual actions are not feasible even if the Court were to treble damages upon a finding of willfulness, as attorneys' fees would greatly exceed the recovery. *See Agne*, 286 F.R.D. at 571 ("Five hundred dollars is not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation like Papa John's."). The class action mechanism is clearly superior to other available methods for the litigation of this matter.

## **CONCLUSION**

For the foregoing reasons, the Court should certify this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the class defined herein.

Date: April 22, 2022

*/s/ Raina C. Borrelli*
Raina C. Borrelli, *pro hac vice*
raina@turkestrauss.com
Samuel J. Strauss, SBN 1113942
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson Street, Suite #201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

Anthony Paronich
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 22nd day of April, 2022.

TURKE & STRAUSS LLP

By:   */s/ Raina C. Borrelli*
    Raina C. Borrelli *Admitted Pro Hac Vice*
    Email: raina@turkestrauss.com
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423